(No. 80-CC-023█ )

OPAL R. SIMPSON, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed February 21, 1985.*

JOHN H. SQUIRES, for Claimant.

NEIL F. HARTIGAN, Attorney General (SUE MUELLER, Assistant Attorney General, of counsel), for Respondent.

Roe, C.J.

This claim arises out of an accident which occurred on September 3, 1978, at New Salem State Park. Claimant asserts that her injury was caused by the failure of the Illinois Department of Conservation to adequately maintain the walkway in New Salem State Park. The facts are not in dispute.

On July 9, 1982, a hearing was held before Commissioner Robert J. Hillebrand. Claimant subsequently filed a brief, but the Respondent has not done so and the time period has long since passed. Commissioner Hillebrand has duly filed his report which the Court has carefully considered along with the other evidence in the record.

On September 3, 1978, Opal Simpson, Claimant, a retired restaurant and motel owner, and members of her family visited New Salem State Park. Claimant was walking in an easterly direction on an asphalt pathway in the park. The pathway was not level with the adjacent ground, but rather had a drop-off of 1 to 1½ inches along its border. There was no warning device of any kind for this drop-off, nor was there any curbing. As another group of tourists approached from the opposite direction, Claimant stepped off the asphalt, admittedly without looking, and slipped and fell. As a result of her fall, she fractured the fifth metatarsal bone in her right foot.

Richard Welchans, a park ranger, testified that the asphalt path that Claimant complains of is located inside New Salem State Park. The purpose of the path is to allow foot traffic through the park. In Welchans' opinion, warning signs would hinder the authenticity of

the village area of the park. The village is a re-creation of New Salem as it existed in the 1830's. Welchans stated that, while the asphalt is there to allow easier passage through the village, the park is designed to attract the least amount of attention to the asphalt which is inconsistent with the 1830's atmosphere. Welchans testified that, in order to reach the cabins and other sites in the park, it is necessary to leave the asphalt path and to travel on other surfaces and that the park averages over 300 visitors per day and to his knowledge this is the first incident of this kind.

The State is not an insurer of Claimant's safety. To recover damages, Claimant must prove by a preponderance of the evidence that a dangerous or defective condition existed on or around the pathway, that the State knew or should have known of this condition, and that this condition caused Claimant's injuries. (*Perlman v. State* (1979), 33 Ill. Ct. Cl. 28.) The testimony of Richard Welchans makes it clear the State knew of the condition on and around the pathway in question. The issue then is whether the condition was unreasonably dangerous so that the State had a duty to warn of the condition or otherwise protect the public using the pathway.

While the issue is easy to define, the application is more difficult. Here, the drop-off on the side of the pathway measured less than two inches. The general rule in such an instance has been clearly stated to be that, while "minor" defects in a walkway are not actionable, it is within the purview of the trier of fact to determine negligence when the defect is such that a reasonably prudent man should anticipate some danger to persons walking upon the walkway. (*Arvidson v. City of Elmhurst* (1957), 11 Ill.2d 601, 145 N.E.2d 105; *Warner v.*

*City of Chicago* (1978), 72 Ill.2d 100, 378 N.E.2d 502.) The problem is defining what is a "minor" defect. *Warner v. City of Chicago*, 72 Ill.2d 100, 101, 378 N.E.2d 502, 503.

It is the opinion of this Court, in considering all the testimony and in viewing the photographs, which show in good detail the drop-off in question, that any defect which existed was not so unreasonably dangerous as to create liability against the State. The walkway was in a rustic, almost rural area. There was no breaking in the pavement itself; rather, the ground along the side of the walkway was lower in some places than the walkway surface. Such a condition is not unacceptable or unreasonable in this factual context.

Based on the foregoing, it is hereby ordered that this claim be, and is, hereby denied.